1  XAVIER BECERRA
   Attorney General of California
2  CHERYL FEINER
   MICHAEL NEWMAN
3  Senior Assistant Attorneys General
   CHRISTINE CHUANG
4  Supervising Deputy Attorney General
   JULIA HARUMI MASS
5  JASLEEN SINGH
   SHUBHRA SHIVPURI
6  JOSHUA SONDHEIMER
   LEE I. SHERMAN (SBN 272271)
7  Deputy Attorneys General
   300 S. Spring St., Suite 1702
8    Los Angeles, CA 90013
     Telephone: (213) 269-6404
9    Fax: (213) 897-7605
     E-mail: Lee.Sherman@doj.ca.gov
10 *Attorneys for Plaintiffs Eloy Ortiz Oakley and Board of*
   *Governors of the California Community Colleges*
11
   (List of other Plaintiffs' counsel continued on next page)
12

13               IN THE UNITED STATES DISTRICT COURT

14            FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                        OAKLAND DIVISION

16

17 | **ELOY ORTIZ OAKLEY, in his official** | Case No. 20-cv-03215-YGR
   | **capacity as Chancellor of California** |
18 | **Community Colleges et al.,** | **PLAINTIFFS' STATEMENT**
   | | **REGARDING INTERIM FINAL RULE**
19 | Plaintiffs, |
   | | Judge:      Honorable Yvonne Gonzalez
20 | **v.** | Rogers
   | | Trial Date:  None Set
21 | | Action Filed:  May 11, 2020
   | **BETSY DEVOS, in her official capacity as** |
22 | **the United States Secretary of Education;** |
   | **U.S. DEPARTMENT OF EDUCATION,** |
23 | |
   | Defendants. |
24

25

26

27

28

JOHN SHUPE
Lynch and Shupe, LLP
  316 Mid Valley Center # 180
  Carmel, CA 93923-8516
  Telephone: (650) 579-5950
  Fax: (650) 579-0300
  E-mail: jshupe@lynchshupelaw.com
*Attorney for Plaintiff Foothill-De Anza Community College District*

JEFFREY M. PRIETO
General Counsel
Los Angeles Community College District
  770 Wilshire Boulevard
  Los Angeles, CA 90017
  Telephone: (213) 891-2188
  Fax: (213) 891-2138
  E-mail: prietojm@laccd.edu
*Attorney for Plaintiff Los Angeles Community College District*

JP SHERRY
General Counsel
Los Rios Community College District
  1919 Spanos Court
  Sacramento, CA 95825
  Telephone: (916) 568-3042
  E-mail: sherryj@losrios.edu
*Attorney for Plaintiff Los Rios Community College District*

MATTHEW T. BESMER
General Counsel
State Center Community College District
  1171 Fulton Street
  Fresno, CA 93721
  Telephone: (559) 243-7121
  E-mail: matthew.besmer@sccd.edu
*Attorney for Plaintiff State Center Community College District*

LJUBISA KOSTIC
Director, Legal Services & EEO
San Diego Community College District
  3375 Camino del Rio South, Room 385
  San Diego, CA 92108
  Telephone: (619) 388-6877
  Fax: (619) 388-6898
  E-mail: lkostic@sdccd.edu
*Attorney for Plaintiff San Diego Community College District*

1    Plaintiffs file this Statement in response to the Court's June 12 Order, ECF No. 40,

2    directing Plaintiffs to address the procedural, substantive, and timing impacts, if any, of

3    Defendants' (DoE) forthcoming Interim Final Rule (IFR) publication, ECF No. 39-1, on

4    Plaintiffs' pending motion for preliminary injunction, ECF No. 16 (PI Mot. or PI Motion). In

5    summary:

6    • The IFR confirms that DoE has made a final determination that Title IV's and 8 U.S.C.

7        § 1611's (§ 1611) eligibility restrictions govern HEERF Assistance, reinforcing Plaintiffs'

8        need for urgent relief.

9    • The IFR does nothing to diminish Plaintiffs' legal claims and demonstrates that DoE's

10       interpretation is not entitled to deference.

11   • The IFR is essentially a repackaging of the arguments that DoE already offered to the

12       Court in its Opposition brief (Opposition or Opp'n), ECF No. 20, and at the June 9

13       hearing, and provides the Court with further grounds for finding the eligibility restrictions

14       on HEERF Assistance to be arbitrary and capricious.

15   Plaintiffs also note the federal district court for the Eastern District of Washington, after

16   considering the IFR, preliminarily enjoined DoE's imposition of Title IV's eligibility restrictions

17   on HEERF Assistance in Washington State without additional briefing. Order Granting Pl.'s Mot.

18   for Prelim. Inj., *Washington v. DeVos*, No. 20-cv-00182-TOR (E.D. Wash. June 12, 2020), ECF

19   No. 31 (*Washington* PI Order) (filed in this case as ECF No. 41-1). Plaintiffs are prepared to

20   promptly address any issues the Court requests but submit that further briefing is unnecessary and

21   that postponing resolution of Plaintiffs' request for preliminary relief will compound the

22   irreparable harm that Plaintiffs and their students have already suffered as a result of DoE's

23   unlawful actions.

24   **I.    PROCEDURAL IMPACT**

25   The IFR has no procedural impact on Plaintiffs' pending PI Motion, irrespective of the

26   mechanism by which DoE imposes the eligibility restrictions on HEERF Assistance. Plaintiffs'

27   Complaint alleges that DoE's imposition of any eligibility restrictions on HEERF Assistance is

28   unlawful and unconstitutional. *See, e.g.*, Compl. ¶¶ 5-6 (May 11, 2020), ECF No. 1. The Prayer

1

1    for Relief seeks to enjoin the imposition and enforcement of eligibility restrictions on HEERF

2    Assistance, whether or not set forth in DoE's guidances. *See, e.g., id.* Prayer for Relief No. 3

3    (seeking an injunction against "imposing and enforcing the eligibility requirements identified in

4    the April 21 HEERF Assistance Guidances or *otherwise* restricting eligibility for HEERF

5    Assistance to only those who are eligible under Title IV of the Higher Education Act of 1965")

6    (emphasis added). The PI Motion likewise argues that the CARES Act does not impose eligibility

7    restrictions on HEERF Assistance, nor does it delegate authority to the DoE Secretary to do so,

8    *see* PI Mot. 12-17, and Plaintiffs' proposed order requests that DoE be enjoined from "[i]mposing

9    or enforcing *any* eligibility requirement for students to receive [HEERF Assistance]. . . ."

10   [Proposed] Order Granting Pls.' Mot. for Prelim. Inj. 1 (May 13, 2020), ECF No. 16-1 (emphasis

11   added). The IFR contains the same eligibility restrictions as previously imposed by DoE and thus

12   harms the Plaintiffs in the "same fundamental way." *Massachusetts v. HHS*, 923 F.3d 209, 220

13   (1st Cir. 2019) (quoting *Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of*

14   *Jacksonville*, 508 U.S. 656, 662 (1993)) (substantive challenges to interim final rule were not

15   rendered moot when final rules were published during the course of litigation and where the final

16   rules are "sufficiently similar" to the challenged interim final rules); *see also Cuviello v. City of*

17   *Vallejo*, 944 F.3d 816, 824-25 (9th Cir. 2019) (challenge to an ordinance is not mooted by an

18   amendment to the ordinance when the "gravamen of [plaintiff's] complaint and the irreparable

19   harm that [plaintiff] alleges remain unaffected by the amendments;" the court is "particularly

20   wary of legislative changes made in direct response to litigation").[1]

21       In addition, the IFR confirms that DoE's eligibility restrictions on HEERF Assistance are

22   binding on Plaintiffs, *see* IFR 20, and the IFR constitutes a final agency action that is ripe for

23   review. *See Public Citizen v. DOT*, 316 F.3d 1002, 1019 (9th Cir. 2003), *rev'd on other grounds*,

24   541 U.S. 752 (2004); *Beverly Enters. v. Herman*, 50 F. Supp. 2d 7, 17 (D.D.C. 1999) (concluding

25   interim final rule was final agency action subject to challenge under the APA); *see also Nat. Res.*

26

27   [1] There are other grounds that the IFR is unlawful that are not raised in Plaintiffs' Complaint or PI Motion, including that it violates the Regulatory Flexibility Act, 5 U.S.C. §§ 601-12. Because those claims were not raised in Plaintiffs' Complaint or PI Motion, Plaintiffs do not raise them

28   here, but reserve their right to challenge the IFR on those grounds.

1  *Def. Council v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992) ("[A]n agency action is ripe for review

2  if the action at issue is final and the questions involved are legal ones.").

3  **II.    SUBSTANTIVE IMPACT**

4         The IFR only further supports Plaintiffs' existing arguments that DoE's imposition of

5  HEERF eligibility restrictions: (a) violate the separation of powers; (b) are ultra vires; (c) are in

6  excess of statutory authority and arbitrary and capricious in violation of the APA; and (d) violate

7  the Spending Clause. The IFR relies on substantive arguments Defendants offered in their

8  briefing and which Plaintiffs have already addressed. While the IFR provides additional grounds

9  for finding the eligibility restrictions arbitrary and capricious, the Court may find that Plaintiffs

10  are likely to succeed on all of their claims and that preliminary relief is warranted without

11  addressing the new grounds for finding the IFR arbitrary and capricious at this stage of the

12  litigation.

13         **A.    DoE's Interpretation of the CARES Act in the IFR is Not Entitled to
              Deference**
14

15         The IFR provides no new basis for affording deference to the agency's position, and the

16  IFR's claim of deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837

17  (1984), is misplaced. IFR 7. "To determine whether the *Chevron* framework governs at all . . .

18  there is a threshold 'step zero' inquiry in which we ask whether 'it appears that Congress

19  delegated authority to the agency generally to make rules carrying the force of law, and [whether]

20  the agency interpretation claiming deference was promulgated in the exercise of that authority.'"

21  *Sierra Club v. Trump*, 929 F.3d 670, 692 (9th Cir. 2019) (quoting *United States v. Mead Corp.*,

22  533 U.S. 218, 226-27 (2001)) (alteration in original). As Plaintiffs argued in their reply brief

23  (Reply), ECF No. 21, the CARES Act did not delegate authority to the DoE Secretary to

24  promulgate HEERF eligibility criteria. Reply 6. The IFR does not identify any delegation from

25  Congress to issue rules arising from the CARES Act itself. Instead, the IFR invokes 20 U.S.C.

26  §§ 1221e-3 and 3474 as the statutory authority for issuing the IFR on HEERF eligibility criteria.

27  IFR 7. These provisions only authorize the DoE Secretary to issue rules in connection with her

28  functions. *See* 20 U.S.C. §§ 1221e-3 (authorizing rules "to carry out functions otherwise vested in

1   the Secretary by law or by delegation of authority pursuant to law"), 3474 (authorizing Secretary

2   "to prescribe such rules and regulations as the Secretary determines necessary or appropriate to

3   administer and manage functions of the Secretary or the Department").

4        Such authority for regulating administrative functions does not authorize the imposition of

5   substantive eligibility requirements or funding conditions. Reply 6 n.5; *see Gonzalez v. Oregon*,

6   546 U.S. 243, 259, 264-65 (2006) (statute authorizing the Attorney General to promulgate rules

7   "for the efficient execution of his functions" under the Controlled Substance Act do not authorize

8   a rule that substantively altered medical standards for the care and treatment of patients; "[w]hen

9   Congress chooses to delegate a power of this extent, it does so not by referring back to the

10  administrator's functions but by giving authority over the provisions of the statute he is to

11  interpret"); *City of Chicago v. Sessions*, 888 F.3d 272, 287 (7th Cir. 2018) (imposing grant

12  conditions "is a tremendous power of widespread impact" and "not the type of authority that

13  would be hidden in a clause without any explanation, and without any reference or

14  acknowledgement of that authority in the statute that actually contains the grant itself").

15  Moreover, when Congress has previously authorized the DoE Secretary to impose funding

16  conditions or set eligibility criteria for a program, it has done so explicitly. PI Mot. 14. No

17  authorization or delegation for imposing funding conditions or setting eligibility criteria for

18  HEERF Assistance is present in the CARES Act. Hence, there is no delegation and *Chevron* is

19  inapplicable. *See Gonzalez*, 546 U.S. at 258, 268 (*Chevron* deference not warranted where statute

20  did "not give the Attorney General authority to issue the Interpretive Rule as a statement with the

21  force of law").

22       Even if *Chevron* were applicable, DoE's position does not warrant deference. Under

23  *Chevron* step one, courts first look to the intent of Congress to determine whether "the statute is

24  silent or ambiguous with respect to the specific issue." *Chevron*, 467 U.S. at 843. "If the intent of

25  Congress is clear, that is the end of the matter; for the court, as well as the agency must give

26  effect to the unambiguously expressed intent of Congress." *Id.* at 842-43; *see also Freeman v.*

27  *Gonzales*, 444 F.3d 1031, 1043 (9th Cir. 2006) (an agency rule that is "contrary to congressional

28  intent and frustrate[s] congressional policy" is not entitled to deference) (quoting *Akhtar v.*

4

1   *Burzynski*, 384 F.3d 1193, 1202 (9th Cir. 2004)).

2   The IFR states that DoE's interpretation was based on its "conclu[sion] that Congress

3   intended the category of those eligible for 'emergency financial aid grants to students' in section

4   18004 of the CARES Act to be limited to those individuals eligible for title IV assistance." IFR 8.

5   Similarly, the DoE Secretary previously said that the eligibility restrictions were based on DoE

6   "following the law" written by Congress. RJN Ex. I. As such, the issue here is "a pure question of

7   statutory construction for the courts to decide" without deference to the agency's interpretation.

8   *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987); *see also Chevron*, 467 U.S. at 843 n.9 ("The

9   judiciary is the final authority on issues of statutory construction . . . If a court, employing

10   traditional tools of statutory construction, ascertains that Congress had an intention on the precise

11   question at issue, that intention is the law and must be given effect.").

12   Furthermore, as discussed in Plaintiffs' prior briefing, Congress's intent in the CARES Act

13   is clear: higher education institutions are permitted to distribute HEERF Assistance without any

14   eligibility limitations. PI Mot. 12-17; Reply 5-12. There are no "ambiguous" terms for the agency

15   to interpret. Under normal rules of statutory construction, the term "students" in subsection (c) of

16   § 18004 governing HEERF Student Assistance must have the same meaning as the term

17   "students" used in subsection (a)(1)(B) governing the funding formula, which includes students

18   who are not eligible under Title IV or § 1611. Reply 9. The IFR omits any recognition that the

19   formula mandated by Congress in subsection (a)(1)(B) encompasses *all* students (not exclusively

20   enrolled in online learning at the start of the pandemic). *See* IFR 14 n.2 (discussing DoE's

21   calculation of the HEERF allocation without acknowledging that Congress required that DoE

22   account for all of these students); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338,

23   361 (2013) (agency manual was not entitled to even *Skidmore* deference where agency "fail[ed]

24   to address the specific provisions of the statutory scheme" relevant to the statute's interpretation).

25   Even if there were ambiguities in the CARES Act that resulted in reaching *Chevron* "step

26   two," as discussed previously and below, DoE's interpretation is not "based on a permissible

27   construction of the statute." *Chevron*, 467 U.S. at 843. Finally, DoE is not entitled to deference in

28   addressing any ambiguities resulting in the imposition of a funding condition not unambiguously

5

1    authorized by Congress. Reply 13 (citing *Va. Dep't of Educ. v. Riley*, 106 F.3d 559, 567 (4th Cir.

2    1997)).

3    **B.      The IFR Provides No Persuasive Justification for Imposing Eligibility
             Restrictions on HEERF Assistance**

4

5          The IFR restates many of the arguments that DoE made in its Opposition to justify the

6    imposition of Title IV's and § 1611's eligibility restrictions on HEERF Assistance. *Compare*

7    Opp'n 13-19 *with* IFR 6-14. The IFR acknowledges that the "emergency financial aid grants" a

8    part of HEERF Assistance "by definition, do not constitute Federal financial student aid under the

9    HEA, including title IV of the HEA." IFR 11. This necessarily means that HEERF Assistance

10   cannot be subject to Title IV's restrictions because Title IV's eligibility restrictions only apply to

11   grants "under" Title IV. 20 U.S.C. § 1091(a); Reply 6. The IFR's discussion that grants

12   authorized by 20 U.S.C. § 1138(d) are subject to Title IV's eligibility restrictions only further

13   supports that Title IV's restrictions do not apply to HEERF. IFR 11. In 20 U.S.C. § 1138(d),

14   Congress *explicitly* incorporated Title IV's eligibility requirements by providing that "students

15   who do not meet the requirements of section 1091(a) of this title" are ineligible for that funding

16   source. No such language appears in § 18004 of the CARES Act.

17         DoE reiterates in the IFR the argument that the term "emergency financial aid grants" in

18   § 18004 of the CARES Act must have the same meaning as the use of "emergency financial aid

19   grants" in § 3504, which explicitly authorizes higher education institutions to use their "allocation

20   *under . . . Title IV*" (emphasis added) to provide emergency financial aid grants to students.

21   Opp'n 18; IFR 10-11. As the Eastern District of Washington court determined, the IFR fails to

22   recognize that "Section 3504 authorizes the reallocation of funds that have already been awarded

23   under Title IV and are clearly subject to Title IV restrictions" while "Section 18004 selectively

24   incorporates certain Title IV definitions in a manner that does not indicate an intent to subject

25   HERRF funds to Title IV restrictions." *Washington* PI Order 27; *see also* PI Mot. 13.

26         The IFR's discussion of other instances in which the CARES Act incorporates certain

27   elements of Title IV repeats the arguments DoE made in its Opposition and does not address key

28   principles of statutory construction. *Compare* IFR 11-13 *with* Opp'n 18-19. As Plaintiffs

                                              6

1   previously argued, "Congress's incorporation of some elements of Title IV with 'surgical

2   precision,' but not Title IV's eligibility requirements, demonstrates that Congress consciously

3   declined to adopt such requirements for HEERF Assistance." Reply 7 (quoting *Navajo Nation v.*

4   *HHS*, 325 F.3d 1133, 1139-40 (9th Cir. 2003)).

5         Finally, the IFR provides no explanation for the application of § 1611's eligibility

6   restrictions on HEERF Assistance beyond that made in DoE's Opposition. *Compare* IFR 8-9 *with*

7   Opp'n 13-15. For the reasons detailed in Plaintiffs' reply (at 8-12), the more specific one-time

8   emergency disbursement of HEERF Assistance in the CARES Act is not subject to the general

9   prohibition in § 1611, particularly where § 1611's purposes are not furthered by its application to

10  HEERF.[2]

11       **C.**    **The IFR Further Demonstrates that DoE's Eligibility Restrictions on**
                    **HEERF Assistance Are Arbitrary and Capricious**

12

13        The IFR does not cure DoE's arbitrary and capricious action, and Plaintiffs have

14  demonstrated a likelihood of success on this claim based on the existing briefing. As Plaintiffs

15  have explained, DoE first told higher education institutions they could provide HEERF

16  Assistance to "all students," RJN Ex. D, and then "failed even to acknowledge its change in

17  position regarding the HEERF Eligibility Requirements, much less provide a 'reasoned

18  explanation.'" PI Mot. 17 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516

19  (2009)). DoE's Title IV and § 1611 eligibility restrictions contradict that prior statement, and the

20  IFR reflects *no recognition* of DoE's prior position that all students are eligible to receive HEERF

21  Assistance.

22        The IFR also exacerbates, rather than resolves, the internal inconsistencies in DoE's

23  agency action. PI Mot. 18. The IFR recognizes that the CARES Act emergency assistance grants

24

---

25  [2] The Washington district court found plaintiff's argument that § 1611 does not apply to HEERF
    to be "reasonable and compelling" but that "Plaintiff has not shown that it is likely to succeed on
    its argument." *Washington* PI Order 21. The court's reasoning in reaching that conclusion,

26  however, does not evidence any consideration of Plaintiffs' arguments here that: (a) the specific
    provisions of the CARES Act control over the general prohibition in § 1611; (b) the purposes of

27  the CARES Act and § 1611 demonstrate that § 1611's eligibility restrictions are not applicable to
    HEERF Assistance; and (c) HEERF Assistance is not a federal public benefit under § 1611.

28  Reply 8-11.

"by definition, do not constitute Federal financial student aid under the HEA, *including title IV of the HEA*." IFR 11 (emphasis added). Yet the IFR applies Title IV eligibility restrictions without explanation other than to say that *a different* funding source, authorized in 20 U.S.C. § 1138(d), is subject to Title IV's eligibility restrictions. *Id.* As already noted, *supra* 6, Congress explicitly incorporated Title IV's eligibility restrictions for that funding source and did not do so for HEERF Assistance, thus leaving that internal inconsistency unexplained. In addition, DoE continues to try to have it both ways: while the IFR first disavows Title IV's requirements with respect to certain procedural requirements under section 482 and 492 of HEA because "the rule does not relate to the delivery of student aid funds under title IV" and "implements the CARES Act, not title IV," IFR 21, the IFR then singles out student relief as subject to Title IV's eligibility requirements, *id.* at 8.

The IFR does nothing to undercut Plaintiffs' additional arguments that DoE's eligibility restrictions are arbitrary and capricious because DoE "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem," and "offered an explanation for its decision that runs counter to the evidence before the agency." PI Mot. 19 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). By imposing eligibility restrictions on HEERF Assistance, the IFR relies on factors that Congress did not intend, which the DoE Secretary previously acknowledged stating that "the only statutory requirement is that funds be used to cover expenses related to the disruption of campus operations due to coronavirus." RJN Ex. D. Separately, the IFR's explanation of the inconsistency between the formula for allocating funds and the HEERF eligibility restrictions, IFR 14 n.2, ignores the congressional command that the Secretary "shall" distribute funds in accordance with the formula created by Congress, which accounts for all students not previously enrolled in online education, § 18004(a)(1)(B), 134 Stat. 281, 567.

Based on the existing briefing, these aforementioned grounds are sufficient for finding that Plaintiffs are likely to succeed on their arbitrary and capricious claim. The IFR's policy justifications for imposing eligibility requirements on HEERF Assistance only provide further bases for setting aside the agency action as arbitrary and capricious. Among the new independent

8

grounds that Plaintiffs would address on briefing for final judgment are the following:

- The IFR states that existing Title IV eligibility standards provide higher education institutions with clarity, and that "using a generic, broad standard" would instead require DoE and institutions to "wade through a litany of specific questions" to determine eligibility. IFR 16. But there is no evidence in the IFR to support that determination, and evidence submitted by Plaintiff Districts evinces the contrary. *See generally* App'x of Decls., ECF No. 16-4. The IFR ignores the obvious alternative of providing institutions with discretion to use HEERF Assistance without the contested eligibility restrictions, as originally allowed in the April 9 letter. RJN Ex. D; *see State Farm*, 463 U.S. at 48 (alternative way of achieving the objectives of the statute should have been addressed and adequate reasons given for its abandonment).

- The IFR asserts that the Title IV eligibility requirements are necessary to avoid "waste, fraud, and abuse," because without such eligibility requirements, individuals who were not "qualified" would be "incentivize[d]" to enroll as students and institutions would "take advantage of this dynamic to further their bottom line." IFR 17-18. That rationale fails to consider facts before the agency that HEERF Assistance is intended for students already enrolled at the time of passage, including those students who may have become ineligible for Title IV *because* of circumstances borne out of the pandemic (*e.g.*, ability to maintain Satisfactory Academic Progress).

- The IFR's analysis of the costs of the agency's actions is cursory and inadequate as it fails to consider: (a) the costs of the eligibility exclusions against the purported benefit of the IFR; and (b) the impact on the other categories of students excluded due to the Title IV eligibility requirements. *See, e.g.*, IFR 30; *see also State Farm*, 463 U.S. at 52, 54 ("reasoned decisionmaking" requires agencies to "look at the costs as well as the benefits" of their actions); *Gresham v. Azar*, 950 F.3d at 93, 103 (D.C. Cir. 2020) (HHS's approval of State Medicaid work requirements held arbitrary and capricious where it failed to adequately consider the loss in coverage that would result, undermining foundational statutory purpose). The primary benefit the IFR attributes to employing the Title IV

1    eligibility requirements is the efficiency gained by using the existing FAFSA process. *See*

2    IFR 17, 29-30. But the IFR then provides that students may be permitted to fill out an

3    application that must be created by each institution, in which students certify their

4    eligibility under Title IV in lieu of completing a FAFSA. *Id.* at 30. If such self-

5    certification applications are sufficient, the FAFSA process is unnecessary, negating

6    DoE's justification for imposing the Title IV eligibility requirements.

7    • The IFR further disregards or underestimates the burdens imposed on higher education

8    institutions. *See Michigan v. EPA*, 135 S.Ct. 2699, 2712 (2015) (EPA's actions held

9    unreasonable when it disregarded costs relevant to its decision to regulate power plants).

10   The IFR makes no mention of the harm to diversity and inclusion that results from

11   excluding students based on Title IV's and § 1611's requirements. *See* PI Mot. 6-11. It

12   also significantly underestimates the amount of time institutions will need to administer

13   DoE's eligibility requirements, which entails navigating a complex FAFSA process or

14   verifying eligibility for students who self-certify. IFR 17 n.5, 30, 41 (estimating five hours

15   per institution to implement Title IV eligibility requirement); *see Nat'l Ass'n of Home*

16   *Builders v. EPA*, 682 F.3d 1032, 1040 (D.C. Cir. 2012) ("When an agency decides to rely

17   on a cost-benefit analysis as part of its rulemaking, a serious flaw undermining that

18   analysis can render the rule unreasonable.").

19   For purposes of final judgment, Plaintiffs submit that additional briefing on these further

20   arbitrary and capricious arguments is warranted, but none is necessary for the Court to grant

21   preliminary relief on the already-briefed arbitrary and capricious grounds, or on the basis of

22   Plaintiffs' other legal claims.

23   **D.    The IFR Further Demonstrates that DoE's Eligibility Restrictions Violate the Spending Clause**

24

25   The IFR reinforces Plaintiffs' Spending Clause claim as the IFR relies on the purported

26   "ambiguous" terms of the CARES Act to impose eligibility restrictions on HEERF Assistance.

27   *See* IFR 7. As Plaintiffs argued previously, "[t]his concession is fatal to the restrictions because

28   when 'Congress intends to impose a condition on the grant of federal moneys, it must do so

10

unambiguously.'" Reply 13 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Independently, the eligibility restrictions violate the Spending Clause's prohibition on post-acceptance conditions, which the IFR does not (and cannot) change. PI Mot. 20-21; Reply 14. The IFR also creates a new Spending Clause ambiguity. Previously, Defendants argued that the HEERF Institution Assistance portion of funds is not subject to Title IV's eligibility limitations, even if the institution uses a portion of those funds to make monetary payments to students. Opp'n 7. The IFR, however, does not include any language allowing higher education institutions to use HEERF Institution Assistance for non-Title IV eligible students. As such, institutions are now in even less of a position "to exercise their choice knowingly, cognizant of the consequences of their participation" in HEERF Assistance. *Pennhurst*, 451 U.S. at 17; *see also* PI Mot. 20; Reply 13.

**III.   TIMING CONSIDERATIONS**

Plaintiffs respectfully submit that additional briefing is unnecessary at this stage and urge the Court to rule on Plaintiffs' PI Motion as soon as possible to address the needs of Plaintiffs and approximately 800,000 California community college students who are suffering irreparable harm as a result of DoE's HEERF eligibility restrictions. PI Mot. 22-25; Reply 14-15. Although similarly-situated federal agencies have issued 24 Interim Final Rules implementing provisions of the CARES Act since April 13, ECF No. 38, DoE waited until June 11, 2020, *after* the hearing on Plaintiffs' PI Motion, to issue an IFR that only confirms what was clear on April 21, 2020: DoE has unlawfully imposed eligibility restrictions on HEERF Assistance. The question of whether Title IV's and § 1611's eligibility restrictions apply to HEERF Assistance has been extensively briefed and argued, and the IFR retreads arguments Defendants have already made in this case. While Plaintiffs remain ready to promptly address any issues at the Court's request, Plaintiffs submit that no further briefing is necessary. Because of the students' urgent and ongoing need for emergency assistance to address the disruptions caused by the COVID-19 pandemic, the equities strongly favor the issuance of a decision on Plaintiffs' PI Motion.

1   Dated:  June 14, 2020                                   Respectfully Submitted,

2                                                           XAVIER BECERRA
                                                            Attorney General of California
3                                                           CHERYL FEINER
                                                            MICHAEL NEWMAN
4                                                           Senior Assistant Attorneys General
                                                            CHRISTINE CHUANG
5                                                           Supervising Deputy Attorney General
                                                            JULIA HARUMI MASS
6                                                           JASLEEN SINGH
                                                            SHUBHRA SHIVPURI
7                                                           JOSHUA SONDHEIMER

8                                                           */s/ Lee I. Sherman*

9                                                           LEE I. SHERMAN
                                                            Deputy Attorneys General
10                                                          *Attorneys for Plaintiffs Eloy Ortiz Oakley*
                                                            *and Board of Governors of the California*
11                                                          *Community Colleges*

12  */s/ John Shupe*                                        */s/ JP Sherry*

13  JOHN SHUPE                                              JP SHERRY
    Lynch and Shupe, LLP                                    General Counsel
14  *Attorney for Plaintiff Foothill-De Anza*               *Attorney for Plaintiff Los Rios*
    *Community College District*                            *Community College District*
15

16  */s/ Jeffrey M. Prieto*                                 */s/ Matthew T. Besmer*

17  JEFFREY M. PRIETO                                       MATTHEW T. BESMER
    General Counsel                                         General Counsel
18  *Attorney for Plaintiff Los Angeles*                    *Attorney for Plaintiff State Center*
    *Community College District*                            *Community College District*
19

20  */s/ Ljubisa Kostic*

21  LJUBISA KOSTIC
    Director, Legal Services & EEO
22  *Attorney for Plaintiff San Diego*
    *Community College District*
23

24

25

26

27

28

                                        12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF SIGNATURES**

I, Lee I. Sherman, hereby attest, pursuant to Local Civil Rule 5-1(i)(3) of the Northern District of California that concurrence in the filing of this document has been obtained from each signatory hereto.

/s/ Lee I. Sherman

LEE I. SHERMAN
Deputy Attorney General
*Attorney for Plaintiffs Eloy Ortiz*
*Oakley and Board of Governors of*
*the California Community Colleges*

13